819 F.2d 1139
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick T. STETSON, Defendant-Appellant.
 No. 86-5652.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1987.
Decided May 20, 1987.
 
 Before HALL and SPROUSE, Circuit Judges, and TIMBERS, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.
 Milton Gordon Widenhouse, Jr. (Joseph B. Cheshire V, on brief), for appellant.
 Kathleen A. Felton, Department of Justice (Samuel T. Currin, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Frederick T. Stetson appeals from his conviction on one count of aiding and abetting the unlawful importation of marijuana and one count of aiding and abetting the unlawful possession with intent to distribute marijuana. 21 U.S.C. Secs. 952(a), 841(a)(1); 18 U.S.C. Sec. 2. Stetson principally contends that the district court allowed inadmissible evidence to be presented to the jury. Finding no abuse of discretion, we affirm.
 
 I.
 
 2
 Stetson owned a forty-two-foot sailboat that was used to transport 9,000 pounds of marijuana from Colombia, South America, to the Wilmington area of North Carolina. The venture ended in failure when government agents seized the boat and apprehended its crew after the marijuana was offloaded in North Carolina. Although Stetson did not physically participate in the transportation of the marijuana, the government's evidence showed that he received an "up-front" payment of $5,000 from Daniel Bertocchi for the use of his boat. It further showed that Bertocchi planned the venture with one Steve Coghlan, who financed the operation.
 
 
 3
 Bertocchi testified as the government's first witness pursuant to a plea agreement. Prior to Bertocchi's direct examination, the government supplied Stetson with a ninety-five-page statement that Bertocchi previously had given to law enforcement officers. In the course of his testimony, Bertocchi, over Stetson's objection, related certain statements that Coghlan made when the two were planning the operation. The government completed its direct examination of Bertocchi at approximately 4:00 p.m. on the first day of trial. Stetson then moved for a continuance so that his counsel could review the statement that Bertocchi had given law enforcement officers. The district court denied the motion.
 
 
 4
 Stetson testified in his own defense at trial. He denied ever discussing marijuana smuggling with Bertocchi and stated that he was unaware that Bertocchi intended to use his boat for smuggling purposes. He further disclaimed any knowledge about drug smuggling in general. On cross-examination, however, the government questioned Stetson about conversations he had with a United States Customs agent that indicated a familiarity with drug smuggling. In response, Stetson acknowledged that he had offered to assist the government with his general knowledge of the "boating community," but he denied ever offering any information about drug smuggling.
 
 
 5
 In rebuttal, the government presented the testimony of the Customs agent. The agent stated that Stetson had given him general information relating to drug smuggling in the New England area. The agent also testified that following his arrest, Stetson made the comment that "[although] he had been involved in minor problems, he had never done anything like this before." Stetson objected to the agent's testimony, claiming that the government failed to disclose his statements as required by Rule 16 of the Federal Rules of Criminal Procedure. The trial court overruled the objection. It also overruled Stetson's objection to the agent's testimony that Stetson had previously been involved in "minor problems." Stetson's counsel then proceeded to cross-examine the agent, specifically questioning him about the contents of Stetson's statements.[1] Following the agent's testimony, the jury returned its verdict, finding Stetson guilty on both of the charged offenses.
 
 II.
 
 6
 Stetson contends that all of the above-mentioned evidentiary rulings were erroneous. He first argues that the admission of Coghlan's statements violated the confrontation clause of the sixth amendment and Rule 801(d)(2)(E) of the Federal Rules of Evidence because there was no showing that Coghlan was unavailable to testify and no independent finding that Coghlan's statements were reliable. We disagree. Neither Rule 801(d)(2)(E)[2] nor the sixth amendment's confrontation clause requires a showing of unavailability before a non-testifying co-conspirator's declarations can be admitted into evidence. United States v. Inadi, 89 L.Ed.2d 390, 401 (1986); Fed.R.Evid. 801(d)(2)(E). Moreover, so long as the discrete requirements of Rule 801(d)(2)(E) are met, the admissibility of co-conspirator declarations does not hinge on an independent determination of reliability. United States v. Chindawongse, 771 F.2d 840, 847 (4th Cir.1985), cert. denied, 106 S.Ct. 859 (1986).
 
 
 7
 Stetson next contends that the trial court abused its discretion by refusing to grant him a continuance so that his counsel could review Bertocchi's ninety-five-page statement. He argues that the Jencks Act required the court to recess the proceedings at the completion of Bertocchi's direct examination. 18 U.S.C. Sec. 3500(c). Again, we disagree. The government supplied Stetson with Bertocchi's statement prior to the commencement of the proceedings on the first day of trial. After opening statements, the government began its examination of Bertocchi, which lasted until 4:00 p.m. Stetson's cross-examination continued until 5:00 p.m. when the trial court recessed for the day. Stetson resumed cross-examination of Bertocchi the following morning. He therefore had a two-hour lunch break on the first day of trial and the entire evening after the completion of the first day's proceedings in which to review Bertocchi's statement. These opportunities to examine the Jencks Act material were more than adequate, and the trial court committed no abuse of discretion in refusing Stetson's request for a continuance.
 
 
 8
 In his third principal contention, Stetson asserts that his prior oral statements to investigating agents, elicited on cross-examination and through the rebuttal testimony of the Customs official, were inadmissible because the government failed to disclose their existence as required by the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 16(a)(1)(A). Our review of the record, however, reveals no violation of this discovery rule. In a colloquy with the trial court, Stetson's counsel admitted that the government had informed him of Stetson's prior statements on the morning that Stetson began his testimony. The record also indicates that the government itself was not aware of these statements until the previous evening. Rule 16(c) of the Federal Rules of Criminal Procedure provides that when "additional evidence" is uncovered that is "subject to discovery or inspection under this rule," the party entitled to discovery shall be "promptly notif[ied]" of its existence. Fed.R.Crim.P. 16(c). The government here complied with its Rule 16(c) obligations.[3]
 
 
 9
 Stetson finally contends that the trial court's admission of evidence relating to his alleged prior arrest for sexual relations with a minor violated Rule 404(b) of the Federal Rules of Evidence. This error, however, was invited by Stetson's counsel. As we have noted, the Customs agent on direct examination stated only that Stetson had admitted to past "minor problems." It was in response to Stetson's continued inquiries on cross-examination that the alleged sex offense was brought out. Although Stetson failed to object to the agent's answer, the trial court later struck the testimony from the record. Under these circumstances, we find no reversible error.
 
 
 10
 In view of the above, the judgment of conviction is affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 On cross-examination, Stetson's counsel probed the Customs agent for more details concerning Stetson's previous "minor problems." In response to this questioning, the agent stated that Stetson had admitted to prior arrests for drunken driving and sexual relations with a minor. The trial court later instructed the jury to disregard the agent's testimony relating to Stetson's prior arrests
 
 
 [2]
 Rule 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E)
 
 
 [3]
 We further observe that the contested evidence was admitted only for the purpose of impeaching Stetson's direct testimony with his prior inconsistent admissions. Stetson's counsel knew of Stetson's prior statements when he elicited answers from Stetson that were inconsistent with them. Furthermore, we find no merit to Stetson's contention that the Customs agent's testimony, wherein he disclosed that Stetson had given information relating to other drug smuggling operations, was inadmissible "collateral" impeachment. Not only did Stetson fail to object to this testimony on proper grounds, but the contested prior statements were directly inconsistent with Stetson's defense theory that he had no knowledge or involvement in any drug-related matters